**UNITED STATES of America, Appellee,**

v.

**Samuel PETTY, Appellant.**

No. 85–2348.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1986.

Decided Aug. 15, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 24, 1986.

Donald V. Morano, Chicago, Ill., for appellant.

Larry D. Hale, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS, McMILLIAN, and BOWMAN, Circuit Judges.

PER CURIAM.

Appellant, Samuel Petty, was convicted in district court[1] under a five-count su-

---

1. The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

perseding indictment of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1982); possession of a firearm by a convicted felon, in violation of 18 U.S.C. app. § 1202(a)(1) (Supp.1984); interstate transportation of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (1982); and interstate transportation of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g) (1982). Petty was sentenced to a total of 20 years imprisonment on the drug and interstate transportation charges, and a concurrent 22–year enhanced sentence for possession of a firearm by a convicted felon as provided in 18 U.S.C. app. § 1202(a)(1) (Supp.1984).

We address five of the issues raised on appeal: Whether the district court erred by 1) counting Petty's previous New York robbery conviction as six separate convictions rather than one for the purpose of enhancing his sentence under 18 U.S.C. app. § 1202(a)(1) (Supp.1984); 2) convicting him of causing the interstate shipment of a firearm and ammunition without sufficient evidence; 3) admitting evidence of various firearms and related materials not the subject of the indictment; 4) excluding evidence offered to impeach a government witness; and 5) failing to comply with Rule 32 of the Federal Rules of Criminal Procedure. We affirm.

## I. Background

Following an extensive investigation of potential drug selling activities occurring within a home owned by Deborah Randle (the charges against her were severed from the charges against appellant Petty), the police obtained a warrant to search Randle's home. Samuel Petty used his key to Randle's home to admit the police officers. During the search, various loaded firearms were found in the master bedroom and living room and another gun as well as a large quantity of ammunition were found in a closet outside of the master bedroom. Cocaine, cocaine cutting agents and other items associated with the preparation and packaging of cocaine for sale were found under the bed in the master bedroom. Petty admitted to sleeping in the master bedroom of Randle's home. The facts are complex and will be discussed as they relate to each of Petty's allegations.

## II. Discussion

### A. Enhanced Sentence

■ Petty was convicted of possession of a firearm by a convicted felon under 18 U.S.C. app. § 1202(a)(1) (Supp.1984), which reads in part:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

\* \* \* \* \* \*

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who had three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

The district court enhanced Petty's sentence as stipulated in the statute based on his previous convictions for robbery in Missouri and New York. The number of convictions Petty received in New York is at issue here. Petty was convicted in a single indictment of six counts of robbery stemming from an incident during which he robbed six different people in a restaurant

**1160**

simultaneously. Petty alleges that because he received six concurrent sentences he actually received only one conviction for the purpose of enhancement under section 1202(a)(1).

Petty's contention that because he was charged under a single indictment, he received only one conviction is unfounded. Under New York law,

> \* \* \* \* \* \*
>
> 2. A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction *unless:*
>
> \* \* \* \* \* \*
>
> (e) Each offense involves death, injury, loss or other consequence to a different victim; \* \* \* .

New York Rules of Criminal Procedure § 40.20(2)(e) (emphasis added).

Clearly, Petty's conduct resulted in loss to six different victims. Therefore, under New York law, Petty could have been charged under six separate indictments. Consequently, Petty could have received one conviction under each of the six indictments. The fact that he was charged under a single indictment does not indicate that only one conviction was possible. Rather, Petty could have received as many convictions under an indictment as were possible under separate indictments. Moreover, New York law states that there are as many offenses as there are victims when the same conduct results in loss to two or more people, even if only one statute is violated. New York Rules of Criminal Procedure § 40.10(1).

Petty also alleges that because he received concurrent sentences he received only one conviction. In New York, sentences imposed for several crimes arising out of the same act must be served concurrently. *Wright v. Smith,* 434 F.Supp. 339, 343 (W.D.N.Y.1977), *citing* New York Penal Law § 70.25 (McKinney's 1975), *rev'd on other grounds,* 569 F.2d 1188 (2d Cir. 1978). The fact that concurrent sentences were required by law is not conclusive as to the number of convictions received. The law merely requires that separate sentences for incidents arising out of the same transaction must be served concurrently.

The doctrine of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), is inapplicable to the present situation. In that case the Court simply stated that if it is determined at one trial that a defendant was not present at a crime scene, collateral estoppel bars subsequent prosecution of the same defendant for other charges stemming from the same incident. However, the *Ashe* court specifically stated that it was not determining how many offenses could have been charged, nor how many punishments would have been appropriate. *Id.* at 446, 90 S.Ct. at 1195.

It is clear that under New York law Petty received six convictions. Consequently, his sentence was properly enhanced under 18 U.S.C. app. § 1202(a)(1).

**B. Interstate Shipment of Firearm and Ammunition**

■ Petty contends that there is insufficient evidence to establish that he "caused" the interstate shipment of the firearm and ammunition, as required by 18 U.S.C. § 922(g) (1982). He bases his claim on the fact that he ordered the firearm through a local dealer who then contacted an out-of-state supplier. Although Petty's contact with the delivery process was indirect, it is clear that he was the party who initiated the interstate movement. In order to obtain ammunition, Petty contacted a friend who ordered the ammunition from a local licensed gun dealer. Petty's friend made a down payment for Petty, and the gun dealer then ordered the ammunition from another state. For the firearm, Petty contacted the local dealer directly who then placed an order with an out-of-state supplier. Petty, along with Ms. Randle, picked up the gun from the local dealer, and all ownership papers were issued in Ms. Randle's name. This was the first time that the dealer was told that the gun was for Ms. Randle and not Mr. Petty.

Although Petty was neither at the point of shipment nor receipt and had no contact

with the gun or ammunition until its interstate movement was complete, such contacts are not essential for conviction under 18 U.S.C. § 922(g). All that is necessary for a conviction under 18 U.S.C. § 922(g) is that the defendant "set the entire delivery process in motion." *United States v. Smith*, 542 F.2d 711, 715 (7th Cir.1976). Because Petty ordered the gun and ammunition, it can be said that he set the delivery process in motion, thereby "causing" the interstate shipment of the gun and ammunition.

### C. Admissibility of Evidence

■ Petty contends that admission of the weapons and paraphernalia associated with firearms found in Ms. Randle's home constituted prejudicial error. He claims that because these items did not belong to him and were not relevant to any of the charges, they were inadmissible. The war manuals and bulletproof vests were admissible exhibits. Because their possession is not a federal crime they do not constitute evidence governed by FED. R. EVID. 404(b). *United States v. Bagaric*, 706 F.2d 42, 68 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983).

■ The weapon and ammunition Petty was charged with possessing were found in a closet in Randle's home. Because knowledge of the existence of the gun and ammunition is an element of the possession charge, evidence that he knew of the other guns and ammunition suggests that he was aware of the existence of the weapons found in a closet. Consequently, evidence relating to the weapons found in the bedroom would be admissible to demonstrate Petty's knowledge of the weapons found in the closet. FED. R. EVID. 404(b).

■ The weapons were also admissible evidence on the drug charges. This court has recognized that firearms are frequently possessed by narcotics dealers to protect themselves and their drugs. *United States v. Simon*, 767 F.2d 524, 527 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985). The fact that loaded weapons were found in the bedroom in which Petty slept is admissible as evidence on the charges that Petty possessed the cocaine.

■ The district court did not err by failing to give a limiting instruction because none was requested and no objection to its absence was made at trial. *United States v. Roth*, 736 F.2d 1222, 1227 (8th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 541, 83 L.Ed.2d 429 (1984). Petty cannot claim on appeal that failure to give a limiting instruction constituted reversible error without having requested such an instruction in the district court. *Roth v. Black & Decker*, 737 F.2d 779, 783 (8th Cir.1984). We do not consider this failure to be either plain error or prejudicial. In this case, the evidence against Petty was overwhelming. He admitted to living in the house where the gun, ammunition and cocaine were found; several people testified that they were involved in purchasing the gun for Mr. Petty; and people testified that they had purchased cocaine from Petty. Because of the vast quantity of evidence against Petty, it seems clear beyond a reasonable doubt that the jury would have convicted him even if the evidence relating to other guns and ammunition had not been admitted.

### D. Impeachment

■ Petty contends that the district court erred by denying him the opportunity to impeach a government witness by extrinsic evidence. James Crawford testified that he had never sold cocaine prior to the purchases he made from Petty to sell to a third party. Petty claims that this testimony "opened the door" for attacks on Crawford's credibility by introduction of evidence from others who claimed to have purchased cocaine from Crawford prior to the events in question. This court has held that under FED. R. EVID. 609(b), extrinsic evidence is not admissible to prove specific conduct of a witness in an attempt to attack his credibility because it could "expand the trial to an inquiry into collateral matters which could distract and confuse

the jury." *United States v. May,* 727 F.2d 764, 765 (8th Cir.1984). Clearly, evidence that Crawford had sold drugs in the past would have had a minimal effect on the issue of whether Petty sold drugs to Crawford.

Moreover, denial of a defendant's opportunity to impeach a witness is subject to harmless error analysis. *Delaware v. Van Ardsall,* — U.S. ——, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Assuming, *arguendo,* that Petty would have been able to convince the jury that Crawford was an unreliable witness because he lied about his past drug dealings, the jury was still presented with sufficient evidence to find Petty guilty beyond a reasonable doubt.

### E. Sentencing

█ Finally, Petty alleges the district court erred in failing to ascertain whether Petty had read and discussed his presentence report with his attorney. Petty contends that his attorney protested the contents of the report at the sentencing hearing and that the district court erred in failing to inquire further into the allegations of the report.

Under FED. R. CRIM. P. 32(a)(1)(A), the judge must determine that both the defendant and his counsel have had an opportunity to read and discuss the presentence report. There is no question that both Petty and his counsel read the report. An affidavit, docket entries and a notice signed by Petty all state that he and his attorney had read the report.

Under FED. R. CRIM. P. 32(c)(3)(D):

(D) *If the comments of the defendant and his counsel* or testimony or other information introduced by them *allege any factual inaccuracy in the presentence investigation report* or the summary of the report or part thereof, *the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.* A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

(Emphasis added.)

Petty contends that his counsel did allege factual inaccuracies and that the district court failed to make a finding regarding these inaccuracies as required. The allegations on which Petty relies are contained in the following statement by his attorney:

Whereas, he was characterized, over and over again through the PSI * * * all of his uncharged and unconvicted offenses, many of which have been committed by someone, at some time, but none of which defendant was ever charged with, much less convicted of.

Because this comment is vague and cryptic and does not allege any specific inaccuracies, it does not fall under Rule 32(c)(3)(D). Because counsel for the appellant failed to make proper objections to the report's contents, the district court was not required to conduct a further investigation under Rule 32, and its failure to do so does not constitute reversible error.

We have considered the other issues raised by appellant and find them to be without merit. Accordingly, we affirm the judgment of the district court.