**UNITED STATES of America, Appellee,**

v.

**Deborah RANDLE, Appellant.**

**No. 85–2209.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1987.

Decided March 31, 1987.

---

William P. Russell, St. Louis, Mo., for appellant.

J. Bennett Clark, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Deborah Randle appeals her conviction of possession of cocaine with intent to distribute and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982). Randle argues that the district court[1] erred in denying her the opportunity to impeach the government's key witness, James Crawford, through the testimony of William Weaver as to Crawford's prior sales of cocaine; in overruling her objections to two jury instructions; in admitting statements of her co-conspirators; in admitting evidence of weapons and ammunition found in her residence; and in denying her motion for acquittal. We affirm the judgment of conviction entered on the jury verdict.

The indictment charged both Randle and Samuel Petty, who lived at her residence, with five counts of possession with intent to distribute and conspiracy to distribute cocaine. Petty was tried separately and convicted; this court affirmed his conviction. *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986). Randle challenges the sufficiency of the evidence to sustain her conviction. We therefore state the evidence developed at her trial in the light most favorable to the government. *See*

---

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

*United States v. Lueth,* 807 F.2d 719, 731 (8th Cir.1986).

There was testimony that in late February or early March of 1984 Randle told a longtime friend, James Crawford, that she had cocaine available for sale to him and his acquaintances. Shortly after this conversation Crawford contacted Randle and arranged to buy one-half a gram of cocaine for his neighbors, Sandy and Deborah Callicott. Crawford gave Randle $50 and she went upstairs, returning with a small white paper package containing cocaine. She gave the cocaine to Crawford who in turn gave it to Sandy Callicott. A few days later Crawford, accompanied by Sandy Callicott, again went to the Randle house. Crawford entered the house while Callicott remained in the car, and Petty brought the gram of cocaine, packaged in white paper, from upstairs.

On March 22, 1985 St. Louis City Police Detective Jerry Leyshock, acting under cover, was introduced to the Callicotts for the purpose of purchasing cocaine. Four days later, Leyshock arranged a purchase from Deborah Callicott. That evening, March 26, Deborah Callicott and Crawford went to the Randle house to purchase one-half a gram of cocaine from Randle for $50. Randle went upstairs to get the cocaine, which was again packaged in white paper. After receiving the cocaine from Crawford, Callicott added a gram of cut to it; he later sold the gram to Leyshock for $110 on a White Castle drive-in parking lot. The next day, March 27, Leyshock accompanied Deborah Callicott and Crawford to the Randle house. He gave $135 to Callicott who gave it to Crawford. Crawford went into the Randle house and again Randle went upstairs to get the cocaine, which was packaged as before. Leyshock asked Crawford about the possibility of purchasing greater quantities and Crawford stated that these people "always have weight" of cocaine for sale. On April 2, Leyshock, Deborah Callicott, and Crawford went to the Randle house to purchase two grams of cocaine for $270. After Crawford was inside the house, two individuals came to the house with clothes for Randle and her children. Randle paid for the clothing with cocaine which she obtained from upstairs. She went upstairs again to get the two grams for Crawford and Randle. Crawford discussed with her the possible sale of a quarter-ounce of cocaine a few days later. Crawford left the house and gave the cocaine, packaged in white paper, to Leyshock and the two discussed purchasing the larger quantity.

Leyshock arranged to meet with Crawford and Deborah Callicott on April 4 for the quarter-ounce purchase. Crawford and Callicott were on the White Castle parking lot for that purpose at the appointed time. The police had decided to execute a search warrant at the Randle house, however, and Crawford and Callicott were arrested after exiting the parking lot. The search turned up quantities of cocaine, cutting agents, drug paraphernalia, cash, firearms, and ammunition.

The charges against Randle and Petty were severed. After a six-day jury trial, Randle was convicted on all counts. The district judge sentenced her to eight years imprisonment on each count, to run concurrently, and fined her $10,000. This appeal followed.

Randle first argues that the district court erred in refusing to permit her to impeach Crawford's credibility through the testimony of William Weaver. Randle's offer of proof established that Weaver would testify that he and Crawford were friends, and that Weaver had seen Crawford sell cocaine. Crawford's modus operandi was to receive money from a customer, tell the customer he would be back in a few minutes, and then walk or drive around for some time before returning and giving the customer the drugs Crawford had been carrying all along. Randle contends that this evidence would have both undermined Crawford's credibility and demonstrated Crawford's interest and bias in favor of the government.

■ Petty raised this argument in the appeal of his conviction, following a similar attempt to impeach Crawford's credibility at his trial, and another panel of this court rejected it. We held in *Petty* that under

Federal Rule of Evidence 608(b), "extrinsic evidence is not admissible to prove specific conduct of a witness in an attempt to attack his credibility because it could 'expand the trial to an inquiry into collateral matters which could distract and confuse the jury.'" *Petty,* 798 F.2d at 1161–62 (quoting *United States v. May,* 727 F.2d 764, 765 (8th Cir.1984)). *Petty* controls our decision here. Moreover, if we were free to follow another course, we are not persuaded we should do so. The district court did not err in refusing to permit Weaver to testify.

■ Randle next argues that the district court erred in refusing to give two of her proposed jury instructions: the first listed the elements of a conspiracy to distribute a controlled substance and the second listed general factors that affect the credibility of a witness. Our reading of the court's instructions convinces us that they contained the substance of the requested instructions. Randle was not entitled to particular wording where, as here, the instructions given adequately and correctly covered the essence of the instructions she requested. *United States v. Reda,* 765 F.2d 715, 719 (8th Cir.1985); *United States v. Lisko,* 747 F.2d 1234, 1238 (8th Cir.1984).

■ Randle also contends that the district court erred in admitting the statements of her co-conspirators Crawford and Deborah Callicott under the procedure this court established in *United States v. Bell,* 573 F.2d 1040, 1043–44 (8th Cir.1978). The district court made the *Bell* findings at the close of all the evidence, ruling that the government had proven by a preponderance of independent evidence that these statements were made by a co-conspirator during the course and in furtherance of the conspiracy. We have carefully reviewed the record, and we cannot conclude that the court erred in so finding. There was ample evidence independent of the statements by Crawford and Callicott to establish the existence of the conspiracy and Randle's, Crawford's, and Callicott's participation in it.

■ Randle next argues that the district court erred in allowing the government to introduce evidence of certain weapons and ammunition found at Randle's residence.[2] Again, Petty raised this argument in the appeal of his conviction and this court rejected his contention. *Petty,* 798 F.2d at 1161. Firearms are frequently possessed by narcotics dealers to protect themselves and their drugs. The firearms found at Randle's residence are relevant to the charge that she possessed cocaine with intent to distribute it. *See United States v. Simon,* 767 F.2d 524, 527 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985).

■ Finally, Randle contends that the evidence was insufficient to sustain her conviction. She argues that the evidence clearly shows that Crawford was in fact the supplier of the drugs to the Callicotts and Detective Leyshock. "In reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the government, resolve evidentiary conflicts in favor of the government, and accept as established all reasonable inferences that may logically be drawn from the evidence." *Lueth,* 807 F.2d at 731 (quoting *United States v. Newton,* 756 F.2d 53, 54 (8th Cir.1985)). We have outlined above the evidence in the record viewed in this light. While we agree that Crawford's testimony was crucial to the government's case, it alone was sufficient to sustain the conviction. We also believe that it was substantially corroborated by the Callicotts and Detective Leyshock. Moreover, Crawford's testimony is supported by the physical evidence—quantities of cocaine and cutting agents, white paper, a triple beam scale, sifters, cash, weapons and ammunition—seized at Randle's residence. We have no difficulty concluding that Randle's

---

**2.** The government introduced photographs of the weapons and ammunition. Among the items seized were five large caliber pistols, six semi-automatic rifles (including two Uzis), two additional rifles, one shotgun, numerous pieces of body armour, and several thousand rounds of ammunition.

conviction was supported by sufficient evidence.

Having carefully considered all of the claims of error, we affirm the judgment of conviction.