17-486-cr
*United States v. Bordeaux*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2017

No. 17-486-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

ALDRIC BORDEAUX,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Connecticut

ARGUED: MARCH 6, 2018
DECIDED: MARCH 27, 2018

Before: CABRANES and RAGGI, *Circuit Judges*, and VILARDO, *District Judge*.[*]

---

This case presents two questions: (1) whether first-degree robbery in violation of Connecticut General Statutes section 53a-134(a)(4) qualifies as a "violent felony" under the so-called elements clause of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i); and (2) whether Defendant-Appellant Aldric Bordeaux's three prior convictions were for offenses "committed on occasions different from one another" within the meaning of ACCA, *id.* § 924(e)(1). We answer in the affirmative to both questions and therefore **AFFIRM** the February 17, 2017 judgment of the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*).

---

JENNIFER R. LARAIA, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), *for* John H. Durham, United States Attorney, District of Connecticut, New Haven, CT, *for Appellee*.

---

[*] Judge Lawrence J. Vilardo, of the United States District Court for the Western District of New York, sitting by designation.

BRIAN SPEARS, Spears Manning LLC, Southport, CT, *for Defendant-Appellant.*

———

JOSÉ A. CABRANES, *Circuit Judge*:

This case presents two questions: (1) whether first-degree robbery in violation of Connecticut General Statutes section 53a-134(a)(4) qualifies as a "violent felony" under the so-called elements clause of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i); and (2) whether Defendant-Appellant Aldric Bordeaux's three prior convictions were for offenses "committed on occasions different from one another" within the meaning of ACCA, *id.* § 924(e)(1). We answer in the affirmative to both questions and therefore **AFFIRM** the February 17, 2017 judgment of the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*).

## I. BACKGROUND

Defendant-Appellant Aldric Bordeaux ("Bordeaux") appeals the District Court's judgment convicting him of one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1)[1] and of

---

[1] "It shall be unlawful for any person . . . who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

ACCA, 18 U.S.C. § 924(e), after a plea of guilty with a reservation of the right to argue to the District Court that ACCA was not applicable. The District Court held that ACCA did apply and sentenced Bordeaux principally to one hundred eighty months' imprisonment.

ACCA sets a mandatory minimum sentence of fifteen years' imprisonment for unlawful possession of a firearm under certain conditions.[2]

*Violent Felony*. One condition is that the defendant must have been convicted three times of committing "a violent felony or a serious drug offense." *Id.* § 924(e)(1). The definition of "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). The clause beginning with the words "has as an element" is known as the "elements clause." *Welch v. United States*, 136 S. Ct. 1257, 1261 (2016).

*Different Occasions*. Another condition is that the three prior convictions must be for offenses "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

---

[2] "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)." *Id.* § 924(e)(1).

The District Court held that three of Bordeaux's prior convictions—all three for first-degree robbery under Connecticut law—met these conditions.

On appeal, Bordeaux argues that the District Court erred in applying ACCA because (a) the Connecticut-law offense of first-degree robbery is not a "violent felony" as that term is defined in federal ACCA; and (b) the three prior convictions were not for offenses "committed on occasions different from one another" as ACCA requires.

A district court's determinations that a prior conviction is for a violent felony and that prior convictions are for offenses committed on different occasions are reviewed *de novo*. *See United States v. Beardsley*, 691 F.3d 252, 257 (2d Cir. 2012). The factual basis of these determinations is reviewed for clear error. *United States v. Brown*, 629 F.3d 290, 293 (2d Cir. 2011).

## II. DISCUSSION

### A. Violent Felony

#### 1. Law

Bordeaux's first argument is that the District Court erred when it concluded that first-degree robbery under Connecticut law is a violent felony within the meaning of ACCA.

To determine whether a given prior conviction is for a violent felony, we "first identify the elements of the statute forming the basis

5

of the defendant's conviction. In doing so, we examine what is the minimum criminal conduct necessary for conviction under [that] particular [state] statute." *Stuckey v. United States*, 878 F.3d 62, 67 (2d Cir. 2017) (alterations in original) (internal quotation marks and citations omitted).

If the statute lists alternative ways for a defendant to commit an offense, we next "look [ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* (alteration in original) (internal quotation marks omitted).

After identifying the elements of the offense, we "compare the minimum conduct necessary for a state conviction with the conduct that constitutes a 'violent felony' under the ACCA. If the state statute sweeps more broadly—*i.e.*, it punishes activity that the federal statute does not encompass—then the state crime cannot count as a predicate 'violent felony' for the ACCA's fifteen-year mandatory minimum." *Id.* (emphasis added) (citation and internal quotation marks omitted).

To qualify as a violent felony under the "elements clause" of ACCA, an offense must be defined so as to require both intent and the use, attempted use, or threatened use of "violent force"; "violent force" means "force capable of causing physical pain or injury to another person." *Id.* at 69 (emphasis omitted) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). To satisfy the intent requirement, the statute "must require that the defendant acted more than merely negligently in committing that offense." *Id.* To satisfy the violent-force

6

requirement, the statute must require the defendant use "force capable of causing physical pain or injury to another person." *Id.* (emphasis omitted) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). A state offense qualifies as a violent felony only if the minimum conduct necessary to commit the offense satisfies both requirements.

## 2. Analysis

In this case, Bordeaux has three prior convictions for first-degree robbery under Connecticut law. The Connecticut first-degree-robbery statute, Connecticut General Statutes section 53a-134, lists alternative ways to commit the offense, enumerated in four paragraphs; according to the state plea-colloquy transcript, Bordeaux was convicted under subsection (a), paragraph (4) of the statute. The elements of the Connecticut first-degree-robbery statute as it was applied to him are therefore as follows:

"A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." Conn. Gen. Stat. § 53a-134(a)(4).

The words "in the course of the commission of the crime of robbery as defined in section 53a-133" incorporate by cross-reference the elements of Connecticut's generic definition of robbery:

7

"A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person *for the purpose of*: (1) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." *Id.* § 53a-133 (emphasis added).

Comparing the conduct that constitutes first-degree robbery under these provisions with the conduct that constitutes a violent felony under ACCA, we conclude that first-degree-robbery as defined in Connecticut General Statutes section 53a-134(a)(4) qualifies as a violent felony within the meaning of ACCA. The first-degree-robbery statute satisfies both requirements of ACCA's elements clause: intent and violent force.

*Intent.* Connecticut's generic definition of robbery, which is incorporated by cross-reference into the definition of first-degree robbery, satisfies ACCA's intent requirement. To commit robbery of any degree under Connecticut law, the perpetrator must use or threaten to use force "for the purpose" of accomplishing one of two specified objectives—not merely negligently. *Id.* § 53a-133. He or she must possess "an intent to force or intimidate the victims to yield their property so as to permit its taking or retention" by the perpetrator, *State v. Torres*, 847 A.2d 1022, 1029 (Conn. App. Ct. 2004) (internal quotation marks omitted).

8

*Violent Force*. Subsection (4) of the Connecticut first-degree-robbery statute requires the threatened use of violent force. The subsection requires that the perpetrator either "threaten[ ] the use" of a firearm or "display[ ]" a firearm. Even mere "display" of a firearm during a larceny or immediately thereafter necessarily implies a threat to commit violence.[3]

Bordeaux counters that in some circumstances a defendant may commit first-degree robbery under Connecticut law without violent force. He relies on two Connecticut cases to support his argument. In *State v. Moore*, 64 A.3d 787 (Conn. App. Ct. 2013), the defendant robbed a bank by passing a note to a bank employee that read, "Give cash. I have gun." *Id.* at 789. In *State v. Lopez*, 889 A.2d 254 (Conn. App. Ct. 2006), the defendant was found to have verbally threatened the robbery victim that he would use a firearm. *Id.* at 259–60. Bordeaux stresses that "neither of the defendants . . . actually possessed a firearm . . . [;] their convictions were based solely on their words." Br. Def.-Appellant 44. This argument does not help Bordeaux's case, however, because even a mere threat to use a firearm that one does not in fact have still qualifies as the "threatened use of physical force" within the meaning of ACCA. 18 U.S.C. § 924(e)(2)(B)(i).

---

[3] Bordeaux argues that the degree of force required to satisfy the generic definition of robbery under Connecticut law does not qualify as violent force within the meaning of ACCA. But since the first-degree-robbery statute's own language satisfies the definition of violent force under ACCA, we do not need to examine the generic definition separately.

## B. Different Occasions

### 1. Law

Bordeaux's other argument is that the District Court erred when it concluded that his three prior convictions were for offenses committed, as ACCA requires, "on occasions different from one another." *Id.* § 924(e)(1).

Under our precedents, a defendant's prior convictions are deemed convictions for offenses "committed on occasions different from one another," *id.*, only if the defendant committed the offenses in distinct "criminal episodes." *United States v. Towne*, 870 F.2d 880, 889–91 (2d Cir. 1989); *see also United States v. Rideout*, 3 F.3d 32, 34–35 (2d Cir. 1993).

To apply the criminal-episode standard appropriately, we look to both the text and the history of ACCA.

*Text*. We start with the ordinary meaning of the word "occasions" in the statute. *See, e.g.*, *Hayden v. Pataki*, 449 F.3d 305, 314–15 (2d Cir. 2006) (en banc). As used in this context, "occasion" often has the sense of an occurrence that takes place at a particular time. *See, e.g.*, *Oxford English Dictionary* v. "occasion, *n.*[1]," section (III)(b)(8) (2d ed. 1989) ("A particular casual occurrence or juncture; a case of something happening; the time, or one of the times, at which something happens; a particular time marked by some occurrence or by its special character."); *Webster's Third International Dictionary* v. "occasion," section (4)(a) (1976) ("[A] particular occurrence:

happening, incident."). But the word often evokes, more broadly, the totality of circumstances giving rise to an opportunity. This broader sense is the primary definition of the word in the *Oxford English Dictionary. See Oxford English Dictionary*, *supra*, section (I)(a)(1) ("A falling together or juncture of circumstances favourable or suitable to an end or purpose, or admitting of something being done or effected; an opportunity."); *cf. Webster's Third International Dictionary*, *supra*, para. (1) ("[A] situation or set of circumstances favorable to a particular purpose or development: a timely chance.").

*History*. The legislative and statutory history of ACCA provides additional guidance about the meaning of "occasions." *Cf. American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2505–06 (2014) (using legislative history to clarify statutory purpose). ACCA was intended, according to its sponsor, to protect the public from "career criminals"—that is to say, from "a limited number of repeat offenders" who "often have no lawful employment" and whose "full-time occupation is crime for profit." H.R. Rep. No. 98-1073, at 3 (1984) (quoting Sen. Arlen Specter), *reprinted in* 1984 U.S.C.C.A.N. 3661, 3662–63. Despite the purpose of the statute, the original text of ACCA did not specify that the defendant had to commit multiple crimes over a lengthy career, however. Instead of requiring, as ACCA now does, that the defendant have committed several crimes "on occasions different from one another," the original statute required only that the defendant have "three previous convictions" for certain offenses. Pub. L. No. 98-473, § 1802, 98 Stat. 1837, 2185 (1984). The addition to ACCA of the phrase "committed on occasions different from one another"

11

resulted from the original decision of the United States Court of Appeals for the Eighth Circuit in *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986), *vacated and remanded*, 481 U.S. 1034 (1987), *reheard on remand*, 828 F.2d 2 (8th Cir. 1987). In *Petty*, the Eighth Circuit originally imposed ACCA's mandatory minimum sentence on a defendant who had six previous convictions for simultaneously robbing six people at a restaurant. *See* 798 F.2d at 1159–60. The Solicitor General confessed error in a petition to the Supreme Court for a writ of certiorari, arguing that Congress had intended ACCA to apply only to defendants whose convictions had arisen from distinct "criminal episodes," not to a defendant who had been convicted on several counts for the same event. 828 F.2d at 3. In response, Congress adopted the Solicitor General's construction of the statute by adding the words "committed on occasions different from one another." *See* Minor and Technical Criminal Law Amendments Act of 1988, § 7056, Pub. L. No. 100-690, 102 Stat. 4181, 4395, 4402 (1988); 134 Cong. Rec. 13,780, 13,782–83 (1988) (analysis submitted by cosponsor Sen. Robert Byrd).

In keeping with this analysis of text and history, our precedents addressing the criminal-episode standard have tried to distinguish between the defendant who simply commits several offenses in a connected chain of events and the defendant who is targeted by ACCA—someone who commits multiple crimes separated by substantial effort and reflection. We therefore understand "occasions" in its broader sense, as the conjuncture of circumstances that provides an opportunity to commit a crime. We consider not only whether a defendant has committed different crimes at different times, but also

12

the other circumstances of the crimes, such as whether the defendant committed the crimes against different victims and whether the defendant committed the crimes by going to the effort of traveling from one area to another. *See United States v. Daye*, 571 F.3d 225, 237 (2d Cir. 2009), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *Rideout*, 3 F.3d at 34–35. Moreover, we consider whether the defendant had a realistic opportunity for substantial reflection between offenses "during which time he could have chosen to end his criminal activity." *Rideout*, 3 F.3d at 35.

When we apply the criminal-episode standard, we are permitted to consider only the sources approved by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005). *United States v. Dantzler*, 771 F.3d 137, 139 (2d Cir. 2014). These sources include "the charging document, written plea agreement, transcript of plea colloquy, [and] analogous materials." *Id.* at 141.

## 2. Analysis

Applying the criminal-episode standard to this case, we conclude that Bordeaux's three prior convictions were for offenses committed as part of three different episodes. The District Court therefore did not err when it concluded that the convictions were for offenses committed on different occasions.

13

The facts as found by the District Court are the following.[4] Bordeaux was a member of a group that committed three robberies in Bridgeport, Connecticut against different victims on the night of November 24, 2009. The first robbery took place near 848 Wood Avenue at about 10:00 p.m., the second near the intersection of Grand Street and Lexington Avenue at about 10:15 p.m., and the third robbery near 246 Federal Street at about 10:55 p.m. The District Court took notice that the distances between the first and second and the second and third robberies were a little less and a little more than one-half mile, respectively. These facts persuade us that Bordeaux committed his three crimes in separate episodes. The lapse of time between the first and second and the second and third crimes was fairly short, a circumstance that should perhaps favor our treating the three offenses as parts of a single episode. The significant distances between the crimes, however, suggest that Bordeaux had to go to a degree of effort to get from one site to the next. Taken together, the time lapse and the distances provided Bordeaux an opportunity to reflect and change course, if he had wanted to do so. *Cf. Rideout*, 3 F.3d at 33 (reporting that the defendant had gone to the effort of making a twenty- to thirty-minute drive across a county line to get from the site of the first offense to the site of the second one).

Bordeaux objects that the District Court's findings of fact relied in part on a police report, a source that the Supreme Court's decisions

---

[4] These facts, agreed on by the prosecution and defense, can be found in the transcript of Bordeaux's plea colloquy in Connecticut state court. *See* App. 76–79, 81–82, 242.

in *Taylor*, 495 U.S. 575, and *Shepard*, 544 U.S. 13, did not allow the District Court to consider. We acknowledge that the District Court relied on a police report to find the time of the second robbery, which it set at around 10:15 p.m. *See* Ruling on Objection to Enhancement Under the Armed Career Criminal Act at 15 & n.2, *United States v. Bordeaux*, No. 3:15-cr-00018 (AWT) (D. Conn. Feb. 14, 2017), ECF No. 129. We do not think that the District Court's finding that fifteen minutes elapsed between the first and second robberies was clearly erroneous, however. According to the transcript of the state-court plea colloquy—one of the sources that we may indeed consider under *Taylor* and *Shepard*—the prosecution and defense agreed that the second robbery had taken place at 10:15 p.m. *See* Sentencing Memorandum Exhibit B (Plea Transcript) at 1, 10–11, *id.* (Aug. 29, 2016), ECF No. 99-2.

Bordeaux also objects that the prosecution did not prove[5] that one robbery had ended before the next one began. In theory, he asserts, one of his accomplices could have stayed behind to guard the victim while the other members of the group traveled on to the next robbery site. In support of this argument he refers to *United States v. Barbour*, 750 F.3d 535 (6th Cir. 2014). In *Barbour*, the defendant and some accomplices had robbed one victim in front of a convenience store and another victim inside the store. *Id.* at 537. The district court in *Barbour* held the defendant's convictions for the robberies qualified as

---

[5] The government bears the burden of proving by a preponderance of the evidence that particular convictions qualify as separate criminal episodes for the purpose of applying ACCA. *See Dantzler*, 771 F.3d at 145.

convictions committed on separate occasions for the purpose of applying ACCA. *See id.* On appeal, the defendant argued that the prosecution had failed to prove that one robbery had ended before the other began, since in theory some of the perpetrators could have still been guarding the first victim while others went inside to rob the second victim. *Id.* at 538. The United States Court of Appeals for the Sixth Circuit agreed with the defendant. It held that the government had not met its burden of proving that the first and second robberies had been committed on different occasions because there was no evidence in the record about what the defendant's codefendants were doing during each robbery. *See id.* at 541, 546.

We do not think that *Barbour* is germane to this case, however. As the state-court plea-colloquy transcript in our case indicates, Bordeaux and state prosecutors agreed that the three Bridgeport robberies had taken place at distinct times: about 10:00 p.m., about 10:15 p.m., and about 10:55 p.m. There was also other evidence in the transcript from which the District Court could infer that none of Bordeaux's accomplices had stayed behind at one site while the others moved on to the other sites. We note in particular that the first and second victims are recorded as having called the police around the times at which the first and second robberies took place respectively. This evidence suggests that neither victim was held under guard after being robbed. We therefore conclude that the District Court did not

clearly err when it found that the robberies had taken place—that is, had started and ended—at distinct times.[6]

## III. CONCLUSION

In summary, we hold as follows:

(1) the District Court correctly concluded that first-degree robbery in violation of Connecticut General Statutes section 53a-134(a)(4) qualifies as a "violent felony" under the elements clause of ACCA; and

(2) the District Court correctly concluded that Bordeaux's three prior convictions were for offenses "committed on occasions different from one another" within the meaning of ACCA.

We therefore **AFFIRM** the District Court's judgment of February 17, 2017.

---

[6] Bordeaux makes the related argument that the District Court impermissibly shifted, from the prosecution to the defense, the burden of proving that each successive robbery had ended before the next one began. To support this argument, he quotes a remark made by the District Court. *See* Br. Def.-Appellant 61 (quoting App. 119, ll. 10–15). Reading the remark in context, we conclude that the District Court did not actually shift the burden of proof to the defense.

17