RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 13-5653

*v.*

JOHNNY L. BARBOUR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga
No. 1:12-cr-00124-1—Curtis L. Collier, District Judge.

Decided and Filed:  April 18, 2014

Before:  MOORE and COLE, Circuit Judges; DRAIN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:**  Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Christopher D. Poole, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Over a decade ago, Johnny Barbour and three accomplices stopped at a Gas-N-Go Market to rob it.  On the way inside, Barbour and the others robbed a motorist sitting in his vehicle in front of the store and then robbed the clerk

---

[*]The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

inside the store.   Barbour was convicted of both aggravated robberies in a single court proceeding.  The three codefendants were all also convicted of both robberies.  About ten years later, Barbour pleaded guilty to a federal firearms offense.  The district court concluded that the robbery of the motorist in the convenience store's lot and the robbery of the store constituted two offenses "committed on occasions different from one another" under 18 U.S.C. § 924(e) and, as a result, ruled that Barbour had three qualifying offenses under that statute and was thus subject to a fifteen-year mandatory-minimum sentence.  Barbour argues that the robbery of the motorist and the robbery of the store were not committed on occasions different from one another.  Furthermore, he posits that it is the government's burden to prove that the three qualifying offenses were committed on occasions different from one another.  Thus, we must answer the question: when does the commission of one crime end and the commission of a second crime begin?  We conclude that the burden to show that the offenses were committed on occasions different from one another, just like the burden to show that the offenses were qualifying violent felonies, rests with the government.  Because the government has not shown that the robbery of the motorist ended before the robbery of the convenience store clerk began, it has failed to show that the two aggravated robberies were committed on occasions different from one another.  Therefore, we VACATE the sentence and REMAND to the district court for resentencing.

## I. BACKGROUND

Johnny Barbour pleaded guilty to possessing ammunition as a convicted felon in violation of 18 U.S.C. § 922(g) on January 15, 2013.  Barbour admitted that he had three convictions for aggravated robbery prior to possessing this ammunition.  R. 10 (Plea Agreement ¶ 4(f)) (Page ID #32).  The Presentence Investigation Report ("PSR") concluded that Barbour "is an armed career criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) [("ACCA")]."  PSR ¶ 18.  During sentencing, Barbour objected to his classification as an armed career criminal.  R. 51 (Sentencing Hr'g Tr. 4–6) (Page ID #82–84).

In particular, Barbour, through counsel, objected to the finding that the two aggravated robberies which he committed on November 21, 2003, at a Gas-N-Go Market constituted offenses that were committed on occasions different from one another.  *See id.* at 4–14 (Page ID #82–92).  According to the record, reflected in the PSR and discussed at the sentencing hearing,

Barbour committed these robberies along with three codefendants. *Id.* at 14 (Page ID #92). The four perpetrators planned to rob the convenience store. *Id.* at 5 (Page ID #83). After arriving at the Gas-N-Go with the plan to rob the store clerk, they robbed a motorist pulled up alongside the business. *Id.* Then Barbour proceeded inside and robbed the store. *Id.* The record, however, does not make clear whether the robbery of the motorist outside the store concluded before the robbery of the clerk inside the store began. *See id.* at 4–14 (Page ID #82–92). Barbour made two arguments why the robbery of the motorist and of the store clerk were not offenses committed on occasions different from one another. First, he argued that the robbery of the Gas-N-Go began when he and his codefendants arrived at the gas station and before the robbery of the motorist began. *See id.* at 4–8 (Page ID #82–86). Second, he contended that there was no evidence from which the district court could determine at what point the threat to the motorist ended. *See id.* at 11–14 (Page ID #89–92). One or more codefendants may have remained outside the convenience store guarding the motorist victim while the rest robbed the store. *See id.* Thus, the robbery of the motorist may have still been ongoing when the robbery of the store began.

Barbour's counsel, while acknowledging that there was no evidence that suggested that the first victim was held when the second robbery began, pointed out that there was no contrary evidence either. *See id.* at 14 (Page ID #92). Thus, there was no evidence regarding whether the first robbery had ended before the second robbery began. *See id.* Barbour's counsel asserted that the burden of establishing that the first robbery ended before the second robbery began rested on the government. *Id.*

Despite this lack of information, the district court deemed that "[t]he facts are pretty well settled and set out, although some of the details may not be." *Id.* at 15 (Page ID #93). The district court observed that:

> This defendant robbed an individual in his automobile outside of a convenience store. After the robbery[,] he then entered the convenience store and robbed the convenience store. Based upon these facts, the Court concludes that it is possible to discern the point at which the first robbery was completed and when the second offense began. The Court also finds that the defendant could have ceased his criminal conduct after the first offense and chosen not to go into the convenience store and rob it, and that the offenses were completed at different

physical locations.   Although both [were] committed on the property of the convenience store, one was outside, and one was inside.

*Id.*  Based on these findings, the district court denied the objection and concluded that Barbour was subject to the ACCA mandatory minimum sentence.  As a result, the court concluded that the applicable guidelines range was 180 to 188 months and imposed a 188-month sentence.

This appeal timely followed.

## II.  DISCUSSION

"We review de novo" a district court's conclusion that two offenses "were 'committed on occasions different from one another.'"  *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006) (quoting *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997)).  If material facts are in dispute, we review for clear error the factual determinations made by the district court.  *United States v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995).

We begin, as always, with the statutory text:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1) (emphasis added).  The statute does not define what it means for offenses to be "committed on occasions different from one another."  Sitting *en banc*, this circuit held that two burglaries of two different businesses that are "committed at different times and places against different victims are separate and distinct criminal episodes and thus qualify as crimes 'committed on occasions different from one another' within the meaning of 18 U.S.C. § 924(e)(1)."  *United States v. Brady*, 988 F.2d 664, 670 (6th Cir. 1993) (en banc).  In *Brady*, the defendant's previous convictions were for robberies committed within an hour at a beauty shop and a bar.  *Id.* at 666.  The *Brady* court relied on an earlier decision, *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991), in which a panel of this court determined that "'§ 924(e) enhanced punishment for multiple criminal episodes that were distinct in time.'"  *Brady*,

988 F.2d at 668 (quoting *Hughes*, 924 F.2d at 1361).  We further defined a criminal episode as "an incident that is part of a series, but forms a separate unit within the whole.  Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration."  *Id.* (quoting *Hughes*, 924 F.2d at 1361).  Thus, the intent of § 924(e) is to punish recidivists— individuals who repeatedly engage in criminal conduct.  *See Murphy*, 107 F.3d at 1208; *Graves*, 60 F.3d at 1185.

The *en banc* decision in *Brady* did not, however, provide panels of the circuit with a clear standard.  *Compare United States v. Wilson*, 27 F.3d 1126, 1131 (6th Cir. 1994) (finding that two rapes committed on the same day against different victims on different floors of the same house were committed on occasions different from one another), *with United States v. Thomas*, 211 F.3d 316, 318–321 (6th Cir. 2000) (finding that two rapes committed against two victims in a car that was driven from one location to a second location were *not* committed on occasions different from one another).  Some panel decisions have focused on whether the first crime was completed or had a definable endpoint before the beginning of the second crime.  *See United States v. Carnes*, 309 F.3d 950, 955–56 (6th Cir. 2002); *Thomas*, 211 F.3d at 321; *Murphy*, 107 F.3d at 1210.  Multiple panels have noted the inconsistency of our opinions.  *See, e.g.*, *United States v. Mann*, __ F. App'x __, 2014 WL 166853, at *2 (6th Cir. 2014) ("This court has struggled with the task of determining when multiple prior offenses were part of the same criminal episode."); *Carnes*, 309 F.3d at 955 ("We have reached seemingly inconsistent results.").

This court's most comprehensive analysis was performed by the panel in *Hill*, 440 F.3d 292.  After surveying preceding Sixth Circuit cases, the panel offered that "there are at least three indicia that offenses are separate from each other."  *Id.* at 297.  These indicia are 1) whether "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins," 2) whether "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense," 3) whether "the offenses are committed in different residences or business locations."  *Id.* at 297–98.  Subsequently, a panel of this court asserted that "[o]ffenses are separate if they meet *any* of these three tests."  *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012).  A

recent unpublished decision, however, strongly criticized application of *Hill* and *Jones* without further analysis.  *See Mann*, 2014 WL 166853, at *6 ("While the *Jones* factors represent a convenient attempt to generalize our law, the cases themselves do not fit neatly into the factors so as to render them a test that requires no further analysis of the facts.  One can imagine any number of scenarios where it would be possible to discern start and end points between two offenses or where it would be possible to argue that the defendant could have ceased his conduct before committing the second offense, thus satisfying a facial view of the *Jones* factors, but where the offenses were part of a single criminal episode.")

Complicating matters further, the facts in the case before us are far from clear.  For example, it is possible that the two aggravated burglaries of which Barbour was convicted did not overlap in time—perhaps Barbour and his accomplices may have robbed the motorist outside, completed that robbery, entered the convenience store, and then commenced the convenience-store robbery.  Such a set of events would be similar to *Carnes*, *Brady*, and *Wilson*. Where two adjacent homes were burglarized one after the other, the *Carnes* court concluded that "[t]he obvious way to distinguish between these two robberies is that Carnes had to leave one residence in order to burglarize the second."  *Carnes*, 309 F.3d at 956.  Thus, "it [was] possible to identify an endpoint between the two offenses."  *Id.*  Similarly, where robberies are committed at two businesses within an hour of each other, the *Brady* court decided that they are separate criminal episodes because the perpetrator could have chosen not to commit the second robbery after concluding the first.  *Brady*, 988 F.2d at 669–70.  Finally, where two rapes of two victims were committed on different floors of the same home, the *Wilson* court determined that there were separate crimes as in *Brady*: "[t]here seems to be no real reason for distinguishing between the events happening in separate rooms on separate floors of the same house versus separate, but nearby, structures."  *Wilson*, 27 F.3d at 1131.  "Defendant could have halted his criminal rampage at any time.  Yet, he chose to continue selecting different victims in separate places." *Id.*

On the other hand, the commission of the two robberies may have overlapped, with the first continuing even after the second commenced—perhaps Barbour and his accomplices may have robbed the motorist, but did not release him before some of the members of the group

moved inside the convenience store and began that robbery.   In that scenario, the in-store robbery may have begun before the robbery of the motorist concluded.   Such a scenario would be most similar to *Murphy* where three perpetrators burgled two units in a duplex.  While two of the perpetrators broke into the second duplex unit, one perpetrator, Murphy, stayed behind to guard the occupant of the first unit and prevent him from calling the police.  *Murphy*, 107 F.3d at 1208.   The *Murphy* court determined that there was "no principled way of distinguishing between the end of the first burglary and the beginning of the second."  *Id.* at 1210.   Thus, the two burglaries in *Murphy* constituted one criminal episode.  *Id.*

The district court concluded that Barbour completed the first robbery outside the convenience store, and "then entered the convenience store and robbed the convenience store." R. 51 (Sentencing Hr'g Tr. at 15) (Page ID #93).  The district court then echoed the language of precedential cases in stating that "it is possible to discern the point at which the first robbery was completed and when the second offense began" and that "the defendant could have ceased his criminal conduct after the first offense and chosen not to go into the convenience store and rob it."  *Id.*  The record, however, does not provide any evidence as to whether the robbery outside the store concluded before the robbery inside the store began.  *See id.* at 4–14 (Page ID #82–92). Nothing in the record refutes Barbour's argument that the threat to the motorist could have continued beyond the point where the robbery of the store clerk began.  *See id.* at 11–14 (Page ID #89–92).  One or more codefendants may have stayed outside the convenience store guarding the motorist victim while the rest robbed the store.  *See id.*   The actions of Barbour's co-defendants directly affect whether these robberies were separate episodes, but the record is devoid of the requisite details concerning what his codefendants were doing during the robberies. Because there was no evidence before the district court from which it could reasonably conclude that the robbery of the motorist ended before the robbery of the store began, such a conclusion is clearly erroneous.

The government appears to acknowledge the "absence of evidence" regarding the actions of the codefendants when the defendant moved inside the store to rob the clerk.  *See* Appellee Br. at 9 n.3.  The government, relying on *United States v. Cowart*, 90 F.3d 154, 159 (6th Cir. 1996), argues that the factual gap should be filled by the defendant.  Appellee Br. at 9–10.  In

*Cowart*, we examined whether "two predicate convictions were part of a single common scheme or plan." *Cowart*, 90 F.3d at 159 (quoting *United States v. Butler*, 970 F.2d 1017, 1027 (2d Cir. 1992)). We concluded that the burden should be on the defendant to prove that the crimes were part of a single common scheme once the government has shown two prior convictions because the elements are subjective and because the defendant has the greatest access to proof on the issue. *See id.* The government here argues that "the defendant, as a participant in the robberies, would have been in the best position to present evidence about the manner in which the robberies were committed and his co-defendants' actions." Appellee Br. at 9–10. Thus, the government urges that we should place the burden on the defendant to show that the robberies were not committed on occasions different from one another.

*Cowart*, however, is entirely distinguishable because we are establishing how the burden should be allocated for a different assessment. *Cowart* interpreted the commentary to particular sentencing guidelines to determine whether Cowart's "three bank robbery convictions were actually 'part of a single common scheme or plan.'" *Cowart*, 90 F.3d at 158 (quoting U.S.S.G. § 4A1.2, comment. (n.3) (since amended in 2007)). The convictions considered in *Cowart* were (and had to be) obtained in unconsolidated prosecutions and sentencings. *See id.* at 158–59. The government in *Cowart* put forward three convictions obtained from separate trials, for crimes committed on separate days. *Id.* at 159. Here, we are interpreting whether two crimes committed on the same day and charged as part of a single trial constitute two offenses "committed on occasions different from one another" under 18 U.S.C. § 924(e).

The *Cowart* panel concluded that the burden should rest with the defendant to show that these independently obtained convictions were "part of a single common scheme or plan" because:

> the single common scheme or plan determination at least partially "rests on elements that are subjective, and it is proper to place the burden of showing both (a) the existence of such a scheme or plan, and (b) the connection between the acts and the plan, on the party who has access to that information, *i.e.*, the defendant."

*Cowart*, 90 F.3d at 159 (quoting *Butler*, 970 F.2d at 1026). While placing the burden on the defendant in this particular circumstance, the *Cowart* panel acknowledged that "as a general

matter, the government bears the burden of proof with regard to the various penalties it seeks to have imposed under the sentencing guidelines." *Id.* Thus, *Cowart*'s burden allocation applies only where the determination whether the sentencing enhancement is proper rests on subjective elements that can be shown solely by the defendant. In the general case where the government and defendant have equal access to proof, the burden must rest with the government.

The determination whether the crimes were part of a common scheme or plan is far more dependent on information in the possession of only the defendant than the issue now before us regarding whether two crimes were committed on occasions different from one another. *See Kirkland v. United States*, 687 F.3d 878, 890 (7th Cir. 2012) ("Unlike with other questions for which the defendant bears the burden of proof at sentencing, requiring the government to prove . . . that the prior offenses occurred on separate occasions is not an onerous burden."). To prove that the crimes were committed on occasions different from one another does not require any subjective elements. The government, instead, must show that the first crime concluded before the second crime began. This temporal separation proves objectively that the crimes were committed on occasions different from one another. Thus, the allocation of the burden is not governed by our conclusion in *Cowart*.

In evaluating where the burden should fall, we conclude that the statutory language of § 924(e) suggests that the burden should fall on the government. The statute requires "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The government agrees that it must show three convictions. *See* Appellee Br. at 9. Moreover, our circuit has placed the burden on the government to prove that each of these convictions was for a violent felony or a serious drug offense. *See United States v. Amos*, 501 F.3d 524, 526 (6th Cir. 2007) ("[I]t is the government's burden to prove that a defendant qualifies for the mandatory 15-year ACCA enhancement.") (alteration in original) (quoting *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005)). It follows that the government must bear the burden of proving the last element in the list as well—that the convictions were for offenses committed on occasions different from one another. Such a conclusion is also implied by the viewpoint inherent in the statutory language. The statute is phrased as requiring that, in order to qualify, offenses must be

committed on occasions different from one another, rather than excluding from counting crimes committed on the same occasion. Thus, we conclude that the government bears the burden of proving that each crime was committed on a different occasion in order to include the crime in the overall count.

The Seventh Circuit has undertaken the most thorough analysis of this issue. Its *Kirkland* decision provides us with the most persuasive precedent. Kirkland claimed that two of his three predicate offenses—a burglary of a home and its tenant and a robbery of a Domino's pizza delivery person—were not committed on occasions different from one another. *Kirkland*, 687 F.3d at 880. The district court had been presented with these arguments:

> [T]he government conceded that it was possible that the two offenses occurred simultaneously given that Kirkland was convicted of the offenses with two codefendants, and there was no information regarding the time of either offense or the location of the robbery to indicate otherwise. Nevertheless, the government argued that the ACCA enhancement was appropriate because Kirkland could not show that the offenses occurred on the same occasion. Kirkland, in turn, agreed that the ambiguities in the record created a situation in which, at best, the district court was left with "a guess" as to what occurred if it only considered *Shepard*-approved documents. He accordingly offered an affidavit and testimony regarding the events that led to the 1985 convictions in an effort to show that the offenses occurred on the same occasion, even though he conceded that such evidence was not contemplated by *Shepard*.

*Id.* at 882 (citing *Shepard v. United States*, 544 U.S. 13 (2005)). Left with a "'factually sparse' record," the district court concluded that "Kirkland could not prove by a preponderance of the evidence that the offenses occurred on a single occasion." *Id.*

The Seventh Circuit reversed. First, the Seventh Circuit determined that only *Shepard*-approved documents could be used for the inquiry whether the crimes were committed on occasions different from one another. *See id.* at 883–87.[1] In its "different-occasions inquiry,"

---

[1] Because the parties before us have not briefed the issue and because it would not impact the outcome in the case before us, we do not address whether non-*Shepard* sources can be used in the different-occasions inquiry. In a footnote, a previous panel of this court explicitly approved of a district court's examination of "the underlying facts of the predicate convictions." *Thomas*, 211 F.3d at 318 n.3. Such a conclusion reached in 2000 before the Supreme Court's 2005 decision in *Shepard* and its progeny appears appropriate for reconsideration. We note that *Kirkland* reversed Seventh Circuit precedent that "distinguish[ed] *Taylor* [*v. United States*, 495 U.S. 575 (1990)] and permitt[ed] the consideration of police reports for the different occasion inquiry," *Kirkland*, 687 F.3d at 886 n.9, and collected cases from numerous other circuits that have similarly prohibited the use of non-*Shepard* documents in the different-occasions inquiry, *id.* at 886–87.

the *Kirkland* court acknowledged that the Seventh Circuit precedent, *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994) (en banc), was the controlling precedent. *Kirkland*, 687 F.3d at 887–88. Particularly, a footnote in *Hudspeth* stated that the government must prove the three convictions, and "[t]he burden then shifts to the defendant to establish by a preponderance of the evidence that the prior convictions occurred on a single 'occasion.'" *Kirkland*, 687 F.3d at 888 (quoting *Hudspeth*, 42 F.3d at 1019 n.6). Given its conclusion that only *Shepard*-approved sources could be used for this inquiry, the Seventh Circuit panel in *Kirkland* concluded that the landscape had "changed dramatically since *Hudspeth*" and rejected that precedent. *Id.* at 888–89 ("When properly viewed in this post-*Shepard* context, we believe that the burden shifting scheme set forth in *Hudspeth* is no longer tenable because it essentially requires an ACCA enhancement even if the available *Shepard*-approved documents . . . [are] inconclusive as to whether the offenses occurred on separate occasions."). Thus, the Seventh Circuit concluded that where the *Shepard*-approved documents are ambiguous as to whether the offenses occurred on different occasions, the statutory enhancement is not appropriate. *Id.* at 889.

The *Kirkland* court then analyzed its newly announced rule that "the more appropriate burden allocation for the separate occasions inquiry requires the government to establish by the preponderance of the evidence—using *Shepard*-approved sources—that the prior convictions used for the ACCA enhancement were 'committed on occasions different from one another.'" *Id*. It determined that the burden on the government is not onerous, as it requires use of the same documents for proving that the offenses were committed on different occasions as are used to prove that the convictions stemming from these offenses are for violent felonies or serious drug crimes. *See id.* at 890 ("Unlike with other questions for which the defendant bears the burden of proof at sentencing, requiring the government to prove by the preponderance of the evidence that the prior offenses occurred on separate occasions is not an onerous burden."). The court concluded that "only in exceptional cases . . . [will] the government . . . find it difficult to meet its burden." *Id.* at 891.

The Seventh Circuit also convincingly distinguished the different-occasions inquiry from the inquiry into a conviction's invalidity, where the burden does fall on the defendant to show that a conviction is invalid. *See id.* at 891–92. A conviction could be invalid for a number of

reasons. Thus, the defendant is in the best position to determine that one of the reasons applies and to assert this reason for invalidity. On the other hand, the government has ready "access to proof for the separate occasions requirement." *Id.* at 891.

Similarly, the *Kirkland* court distinguished the Seventh Circuit's approach under the career-offender provision of the Sentencing Guidelines of putting the burden on the defendant to show that two crimes were part of a single scheme or plan. *See id.* at 892. While placing the burden on the defendant is acceptable where the defendant is in the best position to know whether the two crimes were part of one plan, the government is in a suitable position to show whether two crimes occurred on a single occasion.[2]

Other sister circuits have for the most part placed the burden on the government of showing that prior crimes were committed on different occasions. *See id.* at 892–94 (gathering cases). For example, the Eleventh Circuit has repeatedly concluded that the burden is on the government. *See, e.g., United States v. Rollins*, 518 F. App'x 632, 635 (11th Cir. 2013) ("The government bears the burden of proving that the previous convictions 'arose out of a separate and distinct criminal episode.'" (quoting *United States v. Sneed*, 600 F.3d 1326, 1329 (11th Cir. 2010))); *United States v. Allen*, 488 F. App'x 377, 379 (11th Cir. 2012) ("The government bears the burden of proving that each previous conviction 'arose out of a separate and distinct criminal episode.'" (quoting *Sneed*, 600 F.3d at 1329)); *Sneed*, 600 F.3d at 1329 ("The government must show 'the three previous convictions arose out of a separate and distinct criminal episode.'" (quoting *United States v. Pope*, 132 F.3d 684, 689 (11th Cir. 1998))).

The possible exceptions appear to be cases from the Fifth Circuit and Ninth Circuit. In the Fifth Circuit case, a defendant argued that his qualifying offenses may have been committed simultaneously. *United States v. Bookman*, 263 F. App'x 398, 401 (5th Cir. 2008). In that opinion, the Fifth Circuit acknowledged that the government bears the initial burden of establishing the conviction, but then analogized the "occasions different from one another" inquiry to the determination whether a conviction is invalid. *See id.* at 400. The burden to prove that a conviction is invalid falls on the defendant. *Id.* Thus, the *Bookman* court determined that

---

[2]Our *Cowart* decision should not be extended to the § 924(e) inquiry for the same reasons.

the burden was on the defendant "to introduce . . . evidence . . . that his offenses occurred simultaneously." *Id.* at 401.

In *United States v. Phillips*, 149 F.3d 1026 (9th Cir. 1998), the Ninth Circuit addressed a claim by a defendant relying on our *Murphy* decision. *See Phillips*, 149 F.3d at 1032. Phillips claimed that he never entered one of the businesses he was convicted of burglarizing, but rather that his accomplice burglarized one business while he burglarized a second. *Id.* at 1030. At first, it appears that the Ninth Circuit placed the burden on the defendant to show that the robberies were similar to the situation in *Murphy*. *See Phillips*, 149 F.3d at 1032 (noting that the "case is unlike *Murphy*, however, because there is no evidence in the record to support Phillips' contention that he never entered the first store").[3] However, rather than placing the initial burden on Phillips, the decision required the government to prove that Phillips committed three offenses on different occasions, and "[t]he government carried its burden . . . by submitting unchallenged, certified records of conviction and other clearly reliable evidence." *Id.* at 1033. The government's evidence included "Phillips' plea admission that he entered both stores and the fact that he was apprehended in the second with stolen goods from the first." *Id.* at 1032. This evidence contradicted Phillips's claim that he did not enter one of the stores. *Id.* Thus, the burden Phillips "failed to carry" was one of "challeng[ing] the government's evidence." *Id.* at 1033.

In reviewing other circuits, the *Kirkland* court similarly concluded that the only two circuit cases that applied the burden-shifting scheme in *Hudspeth* that the *Kirkland* court was then rejecting were *Bookman* and *Phillips*. Analyzing those cases, the Seventh Circuit concluded that both the Fifth Circuit and the Ninth Circuit "have indicated that the government must provide evidence that the offenses occurred on different occasions, and the defendant then bears the burden of challenging that evidence." *Id.* at 894. Moreover, both the Fifth Circuit and Ninth Circuit "have declined to apply the ACCA enhancement when faced with an inconclusive record." *Id.* at 895 (noting that in cases where accomplices were present and the record was unclear about the timing of two crimes, the appellate courts vacated ACCA-enhanced sentences).

---

[3]Indeed, *Bookman* incorrectly cites *Phillips* for the proposition that while "the Government carries an initial burden, [courts] also place the onus on defendants to prove that prior offenses are not separate." *Bookman*, 263 F. App'x at 400 n.1.

Thus, the *Kirkland* court concluded that its opinion "is in line with both circuit's [sic] precedent regarding the different occasions inquiry." *Id.* Therefore, the Seventh Circuit held that "the government bears the burden of proving by the preponderance of the evidence that a defendant's prior convictions were 'committed on occasions different from one another' under § 924(e)(1)." *Id*.

We are convinced that placing the burden on the government is the view shared by all of our sister circuits that have squarely addressed the issue, and we see no convincing reason to hold differently from them, creating a circuit split. Thus, we conclude that the government bears the burden of proving that the offenses were committed on occasions different from one another.

In this case, the government has simply failed to show that Barbour's two aggravated robbery convictions for crimes committed at the Gas-N-Go on November 21, 2003, stemmed from two robberies committed on occasions different from one another. Consequently, Barbour is not subject to the enhancements of 18 U.S.C § 924(e)(1). The district court erred in ruling otherwise.

## III. CONCLUSION

For the foregoing reasons, we VACATE the sentence and REMAND to the district court for resentencing consistent with this opinion.