NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0143n.06

No. 14-5666

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ODELL ANDRE HOLDER, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

FILED
Feb 24, 2015
DEBORAH S. HUNT, Clerk

BEFORE: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. When Odell Holder pled guilty to being a felon in possession of a firearm, the district court applied a sentencing enhancement for having three prior felony convictions for crimes committed on separate occasions. Holder's appeal concerns whether two of those crimes—attempted aggravated robbery and evading arrest—occurred on separate occasions. First, he argues that in admitting affidavits of complaint and maps showing locations identified in the affidavits, the district court relied on improper sources of evidence in deciding whether the felonies occurred on separate occasions. Second, he argues that even assuming that the court properly relied on these sources, there was insufficient evidence to find that the felonies occurred on separate occasions. Sixth Circuit precedent expressly permits the use of affidavits of complaint in this inquiry, and the use of the maps reflected permissible judicial notice.

Moreover, the affidavits of complaint establish that Holder committed his felonies on separate occasions. Therefore, Holder's enhanced sentence must be upheld.

On October 21, 2013, Odell Holder was indicted on counts of being a felon in possession of a firearm and being a felon in possession of ammunition. On December 11, 2013, Holder pled guilty to both counts. The probation office filed a presentence report finding that Holder had committed three violent felonies, which meant that Holder faced a statutory minimum of 15 years pursuant to 18 U.S.C. § 924(e). Two of the felony convictions are at issue here, for attempted aggravated robbery and evading arrest.

The details of the conduct leading to Holder's convictions for attempted aggravated robbery and evading arrest come from the affidavits of complaint accompanying the indictments for those crimes. On January 25, 2003, Holder and two others attempted to rob and fired shots at a Jessie Tharpe. Tharpe escaped on foot and called 911, reporting his location as the corner of Buena Vista Rd. and Cotton Ln., Carroll County, Tennessee. On the same day, police officers seeking suspects in the robbery chased Holder on multiple highways in Carroll and Henry Counties. During the chase, Holder drove recklessly and violated traffic laws, eventually crashing his car in Henry County. At that point, Holder fled on foot and was eventually captured.

Holder objected to the presentence report, arguing that the convictions for attempted aggravated robbery and evading arrest resulting from the above conduct were for conduct that took place on the same occasion, and thus do not count as multiple violent felonies under 18 U.S.C. § 924(e). Following the publication of *United States v. Barbour*, 750 F.3d 535 (6th Cir. 2014), and the probation office's response, Holder filed an addendum to his objection

arguing that the probation office's description of the conduct underlying the two convictions was based on sources which are not admissible under *Shepard v. United States*, 544 U.S. 13 (2005).

At the sentencing hearing on June 2, 2014, the Government again relied on the affidavits of complaint, and also presented maps obtained from the online search engine Bing depicting the approximate locations of the attempted robbery and Holder's flight from police. Holder objected to the admission of the maps, in addition to maintaining his objections to the use of the affidavits and the imposition of the 15-year statutory minimum. The district court did not explicitly rule on the admissibility of the maps, but had them marked as an exhibit and referred to them in its ruling from the bench. The district court overruled Holder's objection to the use of affidavits of complaint, and found that the attempted aggravated robbery and evading arrest had occurred on separate occasions. The district court relied on Sixth Circuit precedent to rule that it could consider the affidavits. The district court also held that the attempted robbery and evasion of arrest occurred on separate occasions. The court first reasoned that the offenses took place on different occasions if any of three conditions were met: 1) there was a clear ending point to the first offense prior to a clear starting point for the second offense; 2) the defendant could have chosen not to commit the second offense after completing the first; or 3) the offenses took place in different locations. The court found that Holder's offenses met all three conditions and applied the 15-year minimum sentence along with other penalties. Holder preserved his objections and timely appealed.

First, the district court's use of affidavits of complaint to determine whether Holder's crimes occurred on separate occasions was proper. Binding precedent clearly permits the court to take into account affidavits of complaint in this context. We have held that, in deciding whether criminal convictions occurred on separate occasions for purposes of 18 U.S.C. § 924(e),

a district court may, consistently with *Shepard v. United States*, 544 U.S. 13 (2005), consider the affidavits of complaint preceding those convictions. *United States v. Jones*, 453 F.3d 777, 780 (6th Cir. 2006).

Holder acknowledges that the district court's decision to admit the affidavits of complaint was consistent with precedent, but requests that the panel "reconsider" that precedent. Because *Jones* post-dates and applies *Shepard*, we are bound to follow *Jones*. *Jones* is controlling here: in both cases, the district court found that multiple convictions were based on criminal conduct occurring on different occasions by relying on allegations in affidavits of complaint for those convictions. Because there is no basis for distinguishing the present case, the district court properly considered the affidavits of complaint to take judicial notice of the locations of addresses identified in the affidavits of complaint.

Second, the district court properly used the Bing maps presented by the government to take judicial notice of the locations of addresses identified in the affidavits of complaint. Even though maps are not explicitly referenced by the *Shepard* decision, it is proper to use maps to identify the locations of addresses and geographical features contained in documents properly before a sentencing court. Taking judicial notice of a fact (including a location) is proper under the Federal Rules of Evidence so long as the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Holder conceded at sentencing and does not now contest that the accuracy of the Bing maps (that is, their ability to correctly identify the location of a given address) cannot be questioned. Instead, Holder argues that judicial notice based on non-*Shepard* sources such as maps is inappropriate in this context.

It is clear that if the district court relied on the maps at all, it used the maps only to determine that the two addresses identified in the two affidavits of complaint identified different locations. In analyzing the judicial documents properly before a court in an ACCA inquiry, the court must "draw reasonable inferences." *United States v. Foster*, 663 F.3d 291, 295 (4th Cir. 2011). After all, judicial documents rarely state precisely the conclusion that is relevant to the ACCA inquiry. For example, if the available evidence shows that the defendant committed two crimes at two addresses, a court must infer that the addresses identify different locations in order to find that the defendant committed the crimes in different locations. It is appropriate to take judicial notice of maps in drawing such inferences.

At any rate, the record does not make it entirely clear that the court relied on the maps at all in concluding that the street highway names mentioned in the two affidavits of complaint identified different locations for the two crimes. The court's only reference to the maps indicated only what conclusions it was *not* drawing from them: "I'm not suggesting that the Exhibit 5 [the maps] . . . references what type of time or how much distance there is [between the two crimes committed by Holder]." Even without maps, it would be easy to infer that the highways in the affidavit of complaint for the evading arrest charge identify locations that are not the same as the corner of Buena Vista Rd. and Cotton Ln., the location identified in the attempted aggravated burglary affidavit. Ultimately, the locations of the two crimes are not determinative in answering whether the crimes were committed on separate occasions.

Third, the affidavits of complaint provide sufficient evidence to conclude that Holder's two prior felonies were committed on different occasions. The affidavits clearly indicate that Holder's second felony began after his first felony had ended. It is also clear that the felonies were committed at different locations. Because Holder's attempted aggravated robbery and

evading police were clearly distinct episodes, they were crimes committed on different occasions for purposes of 18 U.S.C. § 924(e). Although we have indicated that offenses are separate if they meet any one of the three tests identified in *United States v. Hill*, 440 F.3d 292, 297–98 (6th Cir. 2006), all three are met here. *See United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012). The three tests are: 1) "if it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins"; 2) "if it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense"; and 3) "if the offenses are committed in different residences or business locations." 440 F.3d at 297–98.

The district court was correct to conclude that Holder's attempted aggravated robbery was over when Tharpe dialed 911, that Holder's evasion of arrest did not begin until officers attempted to arrest him, and that the former must have preceded the latter. Tharpe's 911 call, as described in the affidavit of complaint, suggests that, so far as Tharpe was aware, Holder and his associates were no longer attempting to rob Tharpe. Once a defendant has ceased to attempt to commit a crime, the attempt is over.

Even if Holder anticipated that he might be pursued by police and began fleeing with the intention of avoiding being caught as soon as he stopped attempting to rob Tharpe, he did not actually begin evading arrest under Tennessee law until the police encountered him and attempted to arrest him. Under the Tennessee statute under which Holder was charged, an officer's presence (and instruction to stop) is a prerequisite to the crime: "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, *after having received any signal from the officer to bring the vehicle to a stop*." 39 Tenn. C. Ann. § 39-16-603(b)

-6-

(emphasis added). Thus Holder's second crime—evading arrest—could only have begun after police encountered him on Highway 70 East.

The affidavits also make it clear that Holder had stopped attempting to rob Tharpe some time before police encountered him. The affidavit of complaint for evading arrest notes that police were "in pursuit of robbery suspects." It is safe to infer that police were seeking robbery suspects (and found Holder) because of Tharpe's call regarding an attempted robbery by Holder. In that case, police began seeking robbery suspects only after Holder had stopped attempting to rob Tharpe, meaning that Holder's first crime ended at a distinct point before the starting point of his second crime. When, as here, "it is possible to identify an endpoint between the two offenses," the offenses are separate. *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002). The only possible exception to the rule, which does not apply here, is a fact pattern like the one in *United States v. Graves* where the second offense followed immediately upon the first at the same location. 60 F.3d 1183, 1185 (6th Cir. 1995).

Additionally, in the period after his robbery attempt failed but before police apprehended him, Holder could have decided to cease his criminal conduct and not flee from police. Having earlier attempted to rob someone in no way obligated Holder to flee from police when they approached him. The decision of how to respond to police is completely distinct from the decision to rob, and it is unlikely that Holder irrevocably made both decisions at once when he attempted to rob first and then, after a short pause, encountered the police. Thus, even a relatively small time gap between separate and distinct criminal acts is enough to suggest that the defendant made two separate decisions about whether to commit crime. We have noted, for instance, that in less than half an hour between criminal acts the defendant "could have decided" that one crime was enough. *United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993) (en banc).

These considerations are sufficient to establish that Holder's crimes occurred on separate occasions; had Holder waited idly at the scene of his attempted robbery until the police arrived, his completed crime of attempted robbery would still be a criminal episode distinct from his subsequent flight. Moreover, the affidavits in any event also establish that the attempted robbery and evasion of arrest took place in separate locations. The attempted aggravated robbery affidavit establishes the location from where Tharpe called 911; this is near to but not exactly the location where the attempted robbery took place, since Tharpe fled on foot. The evading arrest affidavit establishes Holder's route while fleeing arrest. Judicial notice of Bing maps (or any other maps) shows that no part of this route is close enough to the location from which Tharpe called 911 to be the location at which Holder attempted to rob Tharpe.

The cases relied on by Holder are distinguishable. First, in *United States v. Thomas*, the defendant, along with an accomplice, raped two women in a car, forcing them to drive to a different location between the two rapes. 211 F.3d 316, 318 (6th Cir. 2000). Although this conduct could be interpreted as two distinct acts of illegal intercourse, we concluded otherwise:

> [I]t is the absence of a completion or definable endpoint of the first crime before the second crime was begun that [suggests the offenses were not separate]. . . . [T]he crime encompassed more than sexual penetration. . . . [The defendant and his accomplice] kept both women under their control throughout the duration of this incident. There was no conclusion of [the defendant's] criminal activity against the first woman when he began raping the second woman.

*Id.* at 321. The offense, in the court's analysis, included more than sexual penetration, and thus it had no clear endpoint.

*United States v. Graves* is also distinguishable. In that case, a burglar assaulted police when they encountered him in a forest where he had hidden items he had just stolen from an adjacent home. 60 F.3d 1183, 1185 (6th Cir. 1995). We assumed that the crime had ended when he had finished hiding the stolen items, as it noted that he assaulted the police officer within

"moments of the burglary," and also noted the defendant's proximity to the scene of the crime. *Id.* at 1187. In other words, it was essential for the *Graves* court that it was at least possible that the defendant encountered and assaulted the police immediately upon completing the burglary, without any time gap.

The instant case is also different from *United States v. Barbour*. In *Barbour*, a defendant and his associates robbed a motorist at a convenience store and also robbed the convenience store. 750 F.3d 535, 538. We held that the Government had not carried its burden of showing that the offenses occurred on separate occasions, because it was impossible to tell whether the two robberies overlapped in time—for example, whether or not the robbers had continued to detain the motorist while robbing the convenience store. *Id.* at 540–41.

In this case, however, there was a clear time gap between Holder's first and second offenses, consisting at least of the time it took for the police to respond to Tharpe's call and find Holder. The only connection between the attempted robbery and the evasion of arrest is that the police's arrest attempt was motivated by Holder's prior attempted robbery, and that the two occurred on the same day. But these considerations are not sufficient in any precedents. Instead, under *Hill* and the cases it analyzes, Holder committed the two felonies on different occasions.

Our disposition of this case is not affected by Holder's Rule 28(j) letter requesting consideration of the Supreme Court's recent order setting *Johnson v. United States* for reargument on the issue of whether the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. *See Johnson v. United States*, No. 13-7120, 2015 WL 132524, at *1 (Jan. 9, 2015). Even assuming that the vagueness claim has been properly preserved by Holder, we have held that the residual clause is not vague. *United States v. Taylor*, 696 F.3d 628, 633 (6th Cir. 2012). Unless and until the Supreme Court rules otherwise, we are

bound by that holding. *See United States v. Fallins*, No. 14-5153, 2015 WL 264627 at \*6 (6th

Cir. Jan. 22, 2015).

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.