NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0721n.06

Case No. 14-6217

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Oct 28, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| JOHNNY L. BARBOUR, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: MERRITT, McKEAGUE, and WHITE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Johnny Barbour was sentenced to 87 months' imprisonment for unlawfully possessing ammunition after his initial 188 month sentence was vacated. During resentencing, the district court provided a limited explanation for Barbour's sentence, but referenced and incorporated its more thorough explanation from Barbour's initial sentencing. It also implicitly considered and rejected Barbour's arguments for a lower sentence within the Guidelines. Barbour challenges procedural and substantive aspects of his sentence. Both his procedural unreasonableness and substantive unreasonableness claims fail. Accordingly, we affirm the sentence imposed by the district court.

**I**

On October 13, 2010, defendant Johnny Barbour shot Michael Kilgore after an altercation between the two occurred while Kilgore was giving Barbour a ride in his car after the two met at a bar in Chattanooga, Tennessee. At trial in Tennessee state court, Barbour testified that Kilgore attacked him and that he shot Kilgore in self-defense. A jury acquitted Barbour of several state charges, including attempted murder. The gun Barbour used in the altercation was never recovered, but a spent .380 caliber shell from Barbour's weapon was found at the scene of the shooting. Barbour subsequently pleaded guilty to violating 18 U.S.C. §922(g)(1)—felon in possession of ammunition.

Barbour had a prior drug conviction and three prior aggravated robbery convictions. R. 10-1, Presentence Invest. Report at 6–7, ¶¶ 26–27, 31, Page ID 6–7. Because of these convictions, Barbour was initially deemed an armed career criminal under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). *Id.* He faced a statutory mandatory minimum sentence of fifteen years' imprisonment with an advisory Guidelines range of 180 to 188 months' imprisonment. *Id.*

Barbour objected to his designation as an armed career criminal, arguing that his two prior aggravated robberies should be counted as a single predicate offense because they were part of one criminal spree.[1] R. 24, Initial Sentencing Memo. at 2–3, Page ID 45–46. The district court disagreed and applied the armed-career-criminal designation. Barbour was then sentenced to 188 months' imprisonment, the top of the Guidelines range. The district court explained that Barbour had "built up quite a history of violent activities" and the maximum recommended

---

[1] Barbour and three accomplices planned to rob a convenience store. On their way inside, they robbed a person who was sitting in his vehicle in front of the store. Barbour and his accomplices then robbed the clerk inside the store at gunpoint. R. 43, Second Revised PSR at 6, Page ID 146.

sentence was necessary "to protect the public from future crimes of the defendant" because he had "been involved in a number of incidents involving firearms and shootings." *Id.* at 95, 98.

Barbour appealed his armed-career-criminal designation in 2013, maintaining his position that his prior aggravated robberies should be a single predicate offense. We agreed that Barbour was "not subject to the [armed-career-criminal] enhancements of 18 U.S.C. § 924(e)(1)," and remanded to the district court for resentencing. *United States v. Barbour*, 750 F.3d 535, 546 (6th Cir. 2014). On remand, the probation officer recalculated Barbour's Guidelines range without the ACCA enhancement to be 70–87 months.

During resentencing, Barbour argued that a sentence on the lower end of his revised 70–87 month Guideline range was appropriate. In support of this argument, Barbour emphasized three points: (1) his criminal activity appeared more extensive than it truly was because of the close time period between his crimes and that all of his criminal history occurred on just three separate days;[2] (2) he continued to maintain frequent contact with his children; and (3) his progress toward earning a General Education Development Diploma and work in the prison kitchen indicated that he was assuming responsibility for his actions. R. 39, Sentencing Memo. at 1–3, Page ID 126–28.

The government argued for a sentence of 87 months, addressing the deterrent value of a longer sentence and the need to protect the public. R. 48, Resentencing Tr. at 8–9, Page ID 221–22. The government emphasized the violent nature of Barbour's three prior aggravated robberies, noting that his current offense—felon in possession of ammunition—was the result of

---

[2] On February 11, 2003, Barbour was arrested for possession and exchange of a controlled substance and possession of a dangerous weapon. On November 21, 2003, Barbour committed three aggravated robberies by robbing a clerk and a customer at one convenience store and a clerk at another (*see supra*, Section I at 2 n.1). On October 10, 2010, Barbour engaged in the self-defense shooting of Michael Kilgore which led to his instant conviction for felon in possession of ammunition. R. 39, Page ID 126–27.

illegally possessing and discharging a firearm only eight months after being released from prison. *Id.* at 221. To reiterate Barbour's involvement with firearms, the government referenced the shooting of Michael Kilgore: "So, the jury did rule it was self-defense, but Mr. Barbour had been out to the club with these people. He had been carrying this gun the whole time before he ended up shooting these people . . . ." *Id.* at 221–22. Directly after Barbour and the government presented their sentencing arguments, the sentencing judge referenced Barbour's plea for a lower-end Guidelines sentence by asking the government whether it "[had] any information as to how [Barbour] has adjusted while in prison[.]" R. 48, Resentencing Tr. at 9, Page ID 222. The government responded that it did not. *Id.* at 222–23.

The district court provided a very brief explanation during Barbour's resentencing and did not mention 18 U.S.C. § 3553(a) or any of its factors:

> This matter is back before the Court as a result of action by the Circuit Court. The Court in viewing the evidence before it deemed a sentence of 188 months appropriate under the guidelines. The Court does not have that option anymore. The only way that the Court could reach that sentence [would be] to impose a non-guideline sentence in this case based upon the facts and, although, that might be something the Court could do, the Court is not going to do that, rather, the Court will stay within the guidelines here. And the Court will impose a sentence at the 87 month point.

R. 48, Resentencing Tr. at 10, Page ID 223. The district court, however, resentencing Barbour only fourteen months after his initial sentence, incorporated its rationale from Barbour's first sentencing hearing by noting that "the reasons that the Court gave for the previous judgment are, obviously, the reasons that the Court gives for this sentence." *Id.* at 224. In Barbour's initial sentencing hearing, the district court provided a thorough explanation for sentencing Barbour to the then top-of-the-Guidelines range of 188 months:

> The Court having considered arguments of counsel, the statement of the defendant, the *nature and circumstances of the offense*, the *history and background of the defendant*, the advisory guideline range we have here, as well

as the Section 3553(a) factors, it is the judgment of the Court that the defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 188 months . . . The Court has decided to impose the sentence that it did to *protect the public* from future crimes of the defendant. As the Court alluded to earlier, Mr. Barbour *has been involved in a number of incidents involving firearms and shootings*. He was shot once in 2002, according to the presentence report. And according to the presentence report, also, he was involved in a shootout with police officers after a robbery. And [his counsel] alluded to another shooting where he was acquitted in state court. *That's an awful lot of shootings for a very young man who is only 31 years old*. Such a sentence also reflects the *seriousness of the offense* and affords *adequate deterrence* to this type of criminal activity.

R. 31, Initial Sent. Tr. at 18–20, Page ID 96–98 (emphasis added).

After imposing Barbour's sentence of 87 months during the resentencing, the sentencing judge asked whether the parties had "any objections to the sentence that the Court just imposed that have not previously been raised?" R. 48, Resentencing Tr. at 12, Page ID 225. Neither Barbour's counsel nor the government raised any objections. *Id.*

Barbour contends that his resentencing was procedurally unreasonable because the district court did not mention any § 3553(a) factors and failed to explicitly reject his arguments for a lesser sentence. He further argues that, even if the district court's explanation from the first sentencing hearing is incorporated by reference into his resentencing hearing, the explanation does not adequately assess his arguments for a lesser sentence because the arguments were made only *after* his initial sentencing. Barbour finally contends that his sentence is substantively unreasonable because the district court *may* have based the sentence on his acquitted conduct in the shooting of Michael Kilgore.

## II

Barbour failed to raise his procedural challenges when given the opportunity to object at sentencing. Therefore, we review his claims of procedural unreasonableness only for plain error.

*United States v. Lumbard*, 706 F.3d 716, 720 (6th Cir. 2013).[3]  Barbour's claim regarding the potential consideration of his acquitted conduct is a substantive unreasonableness challenge and we review for abuse of discretion.  *Id.* at 721.

In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court addressed the outer contours of a "sufficient explanation" during sentencing hearings:  "Overall, a sentencing court should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Duane*, 533 F.3d 441, 451 (6th Cir. 2008) (first alteration in original) (citing *Rita*, 551 U.S. at 356).  However, the Supreme Court emphasized that the "appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. *Sometimes a judicial opinion responds to every argument; sometimes it does not . . . .*  The law leaves much, in this respect, to the judge's own professional judgment."  *Rita*, 551 U.S. at 357 (emphasis added).

## A

Barbour first asserts that the district court committed plain error by failing to explicitly address his sentencing memorandum arguments.  We have expressed a preference that the district court provide its assessment of a defendant's arguments for a lesser sentence, and noted that  "[w]hen the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . a sentencing judge *should* address the parties' arguments and explain why he has rejected those arguments."  *United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) (emphasis added); *see also Rita*, 551 U.S. at 357 ("Where the defendant or prosecutor presents nonfrivolous

---

[3] The analytical framework for determining plain error requires the defendant to "establish that (1) an error occurred, (2) that the error was plain, (3) that the error affected substantial rights, and (4) that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."  *United States v. Blackie*, 548 F.3d 395, 399 (6th Cir. 2008) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 734–37 (1993)).

reasons for imposing a different sentence, however, the judge *will normally go further* and explain why he has rejected those arguments."). We have also held that when it is unclear whether the district court understood or considered a defendant's nonfrivolous argument for a lower sentence and merely noted the existence of the § 3553(a) factors, remand for resentencing is appropriate. *See United States v. Wallace*, 597 F.3d 794, 802, 806 (6th Cir. 2010).

However, we do not require in all cases that a sentencing judge specifically address a defendant's arguments, recognizing a distinct "exception to the requirement of explicit discussion . . . whe[re] the defendant presents issues that are conceptually straightforward." *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009). In these cases, "failure to address [each] argument 'head-on' does not require us to vacate the sentence," *Taylor*, 696 F.3d at 635, because "we may assume, even absent express analysis by the judge, that the sentence reflects consideration of the argument." *Simmons*, 587 F.3d at 361; *see also United States v. Vonner*, 516 F.3d 382, 388 (6th Cir. 2008) (holding that a sentencing judge evidenced his consideration of an argument for a lesser sentence simply by "declining to give [the defendant] a lower sentence"). Ultimately, with respect to within-Guidelines sentences like Barbour's, our analysis is simply whether the "'record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware of the defendant's circumstances' and 'took them into account' in sentencing him." *Vonner*, 516 F.3d at 388.

During sentencing, Barbour offered three straight-forward arguments. Nothing in the record indicates that the district court "misconstrued, ignored, or forgot" Barbour's arguments during his resentencing. *See Thomas*, 498 F.3d at 341. And, unlike in *Thomas*, the record supports that the district court understood and considered Barbour's arguments. For example, the district court evidenced that it considered and understood Barbour's arguments by asking the

Government whether it had "any information as to how [Barbour] has adjusted while in prison" immediately after Barbour and the Government had presented their sentencing arguments. R. 48, Resentencing Tr. at 9, Page ID 222. What is implicit is undeniable—by re-imposing a top-of-the-Guidelines sentence after listening to Barbour's arguments, the district court indicated that it still had the same concerns about Barbour's proclivity toward gun violence that it articulated in Barbour's initial sentencing hearing only fourteen months prior.

While we need not consider whether Barbour's arguments are frivolous, "which is to say [that they] . . . cannot conceivably persuade the court," *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 451 (1988), his arguments were understandably unpersuasive to the district court and, under the circumstances, "we may assume, even absent express analysis by the judge, that the sentence reflects consideration of the argument." *Simmons*, 587 F.3d at 361. First, the district court certainly considered (and implicitly rejected) Barbour's argument that his criminal conduct "appeared more extensive" than it truly was because of the close time period between his crimes. This close time period between two of Barbour's aggravated robberies was the issue before the district court in Barbour's initial sentencing and *formed the basis* for this Circuit overturning Barbour's ACCA designation, vacating his sentence, and remanding the case back to the district court for resentencing. *See United States v. Barbour*, 750 F.3d 535 (6th Cir. 2014). Barbour's remaining arguments regarding his relationship with his children, his progress toward earning a General Education Development Diploma, and his work in the prison kitchen are similarly straight forward.[4] Nothing in the record or in the context of the resentencing suggests that the district court failed to "listen," to "consider," or to "understand" Barbour's arguments,

---

[4] In fact, Barbour's behavior while incarcerated is not uniquely rehabilitative. Terre Haute United States Prison, Barbour's place of incarceration both now and after his initial sentencing, indicates that "[a]ll inmates are expected to maintain a regular job assignment." *See* BUREAU OF PRISONS, FCC-TERRE HAUTE, INDIANA: A&O HANDBOOK 14, 2011, https://www.bop.gov/locations/institutions/tha/THX_aohandbook.pdf.

*Vonner*, 516 F.3d at 388, and the district court's affirmative inquiry regarding Barbour's adjustment indicates that it considered his arguments.

We openly acknowledge that, ideally, the district court would have said more and spent time explaining its rejection of Barbour's arguments for a lesser sentence. However, our precedent makes clear that, at least in this circumstance, failure to do so is not reversible plain error. Finally, "it bears emphasizing that there is a sizeable gap between good sentencing practices and reversibly bad sentencing practices. *Vonner*, 516 F.3d at 389; *see also United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("[W]e do not . . . require that [district courts] exhaustively explain the obverse—why an alternative sentence was not selected—in every instance."). Because Barbour's sentencing memorandum arguments were conceptually straight-forward and the sentencing judge listened to and was actively familiar with each argument, the district court did not commit plain error in implicitly rejecting Barbour's arguments for a lesser sentence.

**B**

Barbour next asserts that the sentencing court committed plain error in failing to consider the § 3553(a) factors. Generally, "a sentence is procedurally inadequate only if the district judge fails to consider the applicable Guidelines range or neglects to consider other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Simmons*, 587 F.3d at 358 (6th Cir. 2009) (internal quotation marks omitted). While the district court is "not required to explicitly consider each of the § 3553(a) factors or to engage in a ritualistic incantation . . . the record must demonstrate[] that the sentencing court addressed the relevant factors in reaching its conclusion." *Duane*,

533 F.3d at 452 (citing *United States v. Trejo–Martinez*, 481 F.3d 409, 413 (6th Cir. 2007)) (internal quotations omitted).

The district court failed to mention § 3553(a) or any of its relevant factors during Barbour's resentencing. However, the district court incorporated its explanation from Barbour's first sentencing hearing into his resentencing hearing. This issue of incorporation by reference was specifically addressed in *U.S. v. Mendez*, where we stated that "we may look to the more thorough explanation furnished at the original sentencing hearing." 498 F.3d 423, 428 (6th Cir. 2007). During that defendant's resentencing, the district court did not "explicitly enumerate any of the factors, [but] it obviously considered the appropriate Guidelines range, 18 U.S.C. § 3553(a)(4), and [stated] that it would be [t]aking into account the nature and circumstances of the offense and [Mendez's] history." *Id.* (third and fourth alterations in original) (internal quotation marks omitted). We accordingly looked to the district court's initial sentencing in conjunction with its resentencing hearing to determine that the sentence was not procedurally unreasonable. *Id.* at 428.

Like *Mendez*, the district court did not explicitly enumerate the § 3553(a) factors during Barbour's resentencing. However, at Barbour's initial sentencing, the district court addressed multiple § 3553(a) factors including: the history and characteristics of the defendant, the seriousness of the offense, the need to afford adequate deterrence, and the need to protect the public from further crimes of defendant. Then, in reimposing a top-of-the-Guidelines sentence, the district court "suggested it attempted to make the punishment fit the crime." *Mendez*, 498 F.3d at 428. In Barbour's resentencing, the district court clearly stated that "the reasons [the Court] gave for the previous judgment are, obviously, the reasons that the Court gives for this sentence" and again imposed a top-of-the-Guidelines sentence. R. 48, Resentencing Tr. at 11,

Page ID 224.  Like *Mendez*, when we "[c]onsider[] these proceedings together, the district court's explanation of its sentencing decision surely allow[s] for reasonable appellate review," *Mendez*, 498 F.3d at 428, and we conclude the combined proceedings provide a sufficient sentencing explanation.

In conclusion, the district court was not required to explicitly reject Barbour's sentencing memorandum arguments given their conceptually straight-forward nature.  *See Duane*, 533 F.3d at 452.  Further, the more thorough explanation furnished at Barbour's initial sentencing hearing serves to adequately explain why the district court re-imposed a top-of-the-Guidelines sentence during Barbour's resentencing.  Even though we recognize that more comprehensive sentencing explanations benefit appellate review, we do not believe this case, reviewed under our deferential standard of plain error, is one of the "exceptional circumstances" where "the error is so plain that the trial judge . . . [was] derelict in countenancing it."  *Vonner*, 516 F.3d at 385.

### III

Barbour also argues that his sentence is substantively unreasonable because of the district court's "potential consideration" of his acquitted conduct.  Appellant Br. at 4, 24–26.  He styles this "potential consideration" as an impermissible factor in his sentencing determination. *See United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012).  Because Barbour was sentenced within the Guidelines range, a rebuttable presumption of reasonableness attaches to his sentence.  *Duane*, 533 F.3d at 453.

At his resentencing hearing, Barbour's attorney notified the district court that Barbour's indictment under 18 U.S.C. § 922(g)(1) (felon in possession of ammunition) arose from a state law prosecution where Barbour was ultimately acquitted of the attempted murder of Michael Kilgore.  The government referenced the state law case during sentencing, noting that Barbour's

self-defense involved discharging a firearm.[5]   Barbour asserts that the government's reference insinuated that he should have been found guilty of attempted murder.  He further argues that the district court *may* have been persuaded by this insinuation, and it *may* have influenced the district court's 87-month top-of-the-Guidelines sentence.

A district court may consider a defendant's acquitted conduct during sentencing, so long as such conduct is supported by a preponderance of the evidence.  *United States v. White*, 551 F.3d 381, 383 (6th Cir. 2008) (en banc).  *But see White*, 551 F.3d at 386 (Merritt, J., dissenting).  However, we need not reach the issue of whether Barbour's acquitted conduct was supported by a preponderance of the evidence because Barbour's assertion that the district court *may* have considered his acquitted conduct is wholly unsupported by the record.  Nothing in the district court's initial sentencing or resentencing indicates that it based any part of its sentencing decision on a perception that Barbour actually attempted to murder Kilgore.  Yes, the district court did reference the *shooting* of Michael Kilgore during the initial sentencing, but never suggested that it viewed the shooting as anything other than self-defense.  Nor did the court indicate that the acquitted conduct played any role during sentencing.  Instead, the district court simply considered that Barbour's conviction for unlawful possession of ammunition—the reason Barbour was in front of the court in the first place—arose as a result of Barbour discharging a firearm in shooting Kilgore.  To argue that the district court must divorce the context of Barbour's conviction for unlawful possession of ammunition from Barbour's actual use of the firearm (whether or not in self-defense) is contrary to 18 U.S.C. § 3553(a)(1)'s requirement that the court "shall consider . . . the nature and circumstances of the offense[.]"

---

[5] "So, the jury did rule it was self-defense, but Mr. Barbour had been out to the club with these people.  He had been carrying this gun the whole time before he ended up shooting these people."  R. 48, Resentencing Tr. at 8–9, Page ID 221–22.  *See supra*, Section I at 4.

Barbour would have this Court read the district court's silence regarding his acquitted conduct to be a tacit acceptance that he attempted to murder Kilgore, arguing that "nothing in the resentencing transcript indicates that the district court *excluded* Mr. Barbour's acquitted conduct with selecting his sentence[.]" Appellant Reply Br. at 16 (emphasis added). The district court is not required to reject every insinuating statement made by the government, nor should it be forced to expound an explicit list of the things it did *not* consider in sentencing. *See Gale*, 468 F.3d at 940 (explaining that a district court need not "exhaustively explain" why an alternate sentence was not selected). Finally, Barbour points to no statement indicating that the district court was suspicious of the jury's acquittal. Barbour was indeed acquitted of attempted murder. He was not, however, acquitted of using a gun when he shot Kilgore. Because the district court did not improperly consider his acquitted conduct, we find no error and Barbour's claim of substantive unreasonableness fails.

## IV

Barbour has not shown that the district court committed plain procedural error or imposed a substantively unreasonable sentence. Thus, we AFFIRM the sentence imposed by the district court.